1

2

3

4                          UNITED STATES DISTRICT COURT

5                               DISTRICT OF NEVADA

6                                      * * *

7   BOARD OF TRUSTEES OF THE                    Case No.2:22-CV-565  JCM (NJK)
    CONSTRUCTION INDUSTRY AND
8   LABORERS HEALTH AND WELFARE
    TRUST, et al.,                                          ORDER
9
                              Plaintiff(s),
10
11             v.

12  SENTINEL MAINTENANCE OF LAS
    VEGAS, LLC, et al.,
13
                              Defendant(s).

14

15          Presently before the court is defendants Sentinel Maintenance of Las Vegas, LLC

16  ("Sentinel Maintenance") and SMI, LLC ("SMI") (collectively, "defendants")'s motion for

17  summary judgment. (ECF No. 40). Plaintiffs Board of Trustees of the Construction Industry and

18  Laborers Health and Welfare Trust, the Board of Trustees of the Construction Industry and
19
    Laborers Joint Pension Trust, the Board of Trustees of the Construction Industry and Laborers
20
    Vacation Trust, and the Board of Trustees of the Southern Nevada Laborers Local 872 Training
21
22  Trust ("plaintiffs" or collectively, the "trust funds") filed a response (ECF No. 47), to which

23  defendants replied (ECF No. 55).

24          Also before the court is the trust funds' motion for summary judgment.  (ECF No. 45).
25
    Defendants filed a response (ECF No. 50), to which the trust funds replied (ECF No. 54).[1]
26

27  _____

28          [1] The trust funds filed three motions for summary judgment in this case.  The second motion
    (ECF No. 46) is identical to the first motion (ECF No. 45), but it is sealed.  Furthermore, the

## I.    Background

This is an Employee Retirement Income Security Act of 1974 ("ERISA") action arising out of an alleged failure by defendants to meet their obligations to remit employee benefit contributions to the trust funds as set forth in the master labor agreement ("MLA") and trust agreements.

This case has a convoluted history, with the parties contesting almost every single fact. The trust funds are nonprofit trust funds formed under the Taft-Hartley Act that provide health, pension, vacation, and training benefits to the Southern Nevada Laborers union, each of which is governed by a trust agreement.  (ECF No. 45-2 at 2-195).  The MLA between the Union and the Nevada Contractors Association provides that employee benefit contributions shall be paid to the trust funds by employers bound by the MLA.  (*Id.* at 231-33).

In 2019, Sentinel Maintenance and SMI acquired Old Sentinel Maintenance and Old SMI, companies that provided window washing services in Las Vegas.  (ECF Nos. 41 at 53; 45-2 at 261).  Old Sentinel Maintenance did work that *was not* covered by any collective bargaining agreement with any labor union.  (ECF No. 41 at 53) (emphasis added).  Old Sentinel Maintenance operated in Las Vegas from April of 2008 to June of 2019.  (*Id.*).

Old SMI did work that *was* covered by a collective bargaining agreement and operated in Las Vegas during the same time period as did Old Sentinel Maintenance.  (*Id.*) (emphasis added).  On June 1, 2019, Chris Greco ("Greco") and Marc Schultz ("Schultz") acquired Old Sentinel Maintenance and Old SMI.  (*Id.* at 54).  Defendants allege that Greco and Schultz were aware of

---

introductory section of the sealed motion contains one different paragraph that does not affect the merits of either motion.  After Judge Koppe issued an order regarding numerous motions to seal, the trust funds filed yet another motion for summary judgment.  (ECF No. 65).  This motion is identical to the original sealed motion (ECF No. 46), but it contains different citations to exhibits. Regardless, this order will adjudicate all outstanding motions for summary judgment (ECF Nos. 40; 45; 46; and 65) in this case.

the need to operate "New Sentinel Maintenance" and "New SMI" as separate companies to avoid illegal double-breasting concerns.  (*Id.*).

Upon their acquiring Old Sentinel Maintenance and Old SMI, Greco and Schultz obtained an Employer Identification Number ("EIN") from the Internal Revenue Service for Sentinel Maintenance only.  (*Id.*).  Defendants claim that from June of 2019 through January of 2020, Sentinel Maintenance was the only company that performed any work, and it neither held itself out as a unionized employer nor sought any work on union construction projects covered by the MLA.  (*Id.*).  This work allegedly consisted of non-union window cleaning maintenance jobs. (*Id.*).  Defendants further represent that Greco and Schultz did not set up a new EIN and payroll system for SMI because they did not believe SMI would need it.  (*Id.* at 54, 82).

In February and July of 2020, SMI performed two window cleaning jobs at the Encore at Wynn Las Vegas (the "Encore job") and Circa Resort & Casino, respectively.  (*Id.* at 55, 56). Between these jobs, SMI finally obtained its own EIN distinguishable from that of Sentinel Maintenance.  (*Id.* at 56).  SMI did not have its own payroll system at the time of the Encore Job. (*Id.* at 55).  Therefore, the workers were entered into Sentinel Maintenance's payroll system.  (*Id.*).

Defendants maintain that although the workers and their hours were recorded on Sentinel Maintenance's payroll, the workers performed on behalf of SMI.  (*Id.*).  Accordingly, Sentinel Maintenance, on behalf of SMI, issued a check to the union trust funds for all contributions SMI owed for the hours the workers, who were supplied by the union, spent performing the Encore job. (*Id.*).

On February 2, 2021, the trust funds' independent auditor conducted a phone conference with Sentinel Maintenance employee Limor Caspi ("Ms. Caspi") and sent a list of requested documents to her.  (ECF No. 45-3 at 7-8)  The key document discovered by the trust funds during

the audit was Sentinel Maintenance's payroll report, allegedly demonstrating that Sentinel Maintenance was conducting all business operations, including paying all employees for work covered under the MLA and remitting employee benefit contributions to the trust funds, which would be an ERISA violation.  (*See* ECF No. 45-4 at 4-71).

The trust funds' theory is that the "new" SMI was created as a shell entity to maintain the Old Sentinel entities' relationship with the union so that the newly created Sentinel Maintenance could profit from lucrative contracts with signatory general contractors.  (ECF No. 65 at 13).  In essence, the trust funds believe that the newly created SMI was not an employer, but rather an illusion to shirk obligations to pay the required union wages and employee benefit contributions to all of its employees.  (*Id.* at 13-14).

The trust funds' complaint asserts four causes of action: (1) ERISA delinquent contributions, as Sentinel maintenance and/or SMI was expressly bound by the MLA; (2) ERISA delinquent contributions, because defendants evidenced an intent to be bound by the MLA; (3) ERISA delinquent contributions – alter ego; and (4) ERISA delinquent contributions – single employer.  (ECF No. 1 at 3-5).

Defendants move for summary judgment on all four causes of actions, arguing that (1) they were not expressly bound by the MLA, (2) never evidenced an intent to be bound by the MLA, (3) Sentinel Maintenance and SMI are not alter egos, and (4) Sentinel Maintenance and SMI are not "single employers" for labor law purposes.  (ECF No. 40).

The trust funds move for summary judgment as well, positing that (1) Sentinel Maintenance and/or SMI assumed Old SMI's collective bargaining agreement and thus manifested an intent to be bound by it, (2) Sentinel Maintenance and SMI are indeed alter egos, and (3) Sentinel Maintenance and SMI are both bound by the MLA under the single employer theory of

liability.

## II.    Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id*.

In determining summary judgment, the court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000).  Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id*.

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp*., 477 U.S. at 323–24.  If the moving

party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v.*

- 6 -

1  *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410,

2  418-19 (9th Cir. 2001)) ("[t]o survive summary judgment, a party does not necessarily have to

3  produce evidence in a form that would be admissible at trial, as long as the party satisfies the

4  requirements of Federal Rule of Civil Procedure 56.").

5

6  **III.    Discussion**

7          A.  <u>Whether Sentinel Maintenance had an express obligation to contribute under the MLA</u>

8          The first issue for the court to decide appears in defendants' motion for summary judgment

9  only, whereas the remaining three issues are contested in both parties' motions.  The issue here is

10  whether Sentinel Maintenance had an express obligation to contribute to the employees' health

11  and pension benefits pursuant to the MLA.

12

13          For an employer to be obligated to make benefit contributions for the employees of its

14  present business, there must be a binding labor agreement between the union and the employer

15  that extends to the business being conducted.  *See Carpenters S. Cal. Admin. Corp. v. Russell*, 726

16  F.2d 1410, 1413 (9th Cir. 1984).

17

18          Section 8(f) of the National Labor Relations Act allows employers and unions in the

19  construction industry to enter into "prehire" agreements, which are agreements generally signed

20  before the hiring of employees and, therefore, before any showing of union support.  *United*

21  *Brotherhood of Carpenters and Jointers of Am. v. Endicott Enters., Inc.*, 806 F.2d 918, 921 (9th

22  Cir. 1986).   Prehire agreements enable employees in the construction business, in which

23  employment is generally transitory, to obtain some of the benefits of union representation before

24  the union obtains majority support.  *See Todd v. Jim McNeff, Inc.*, 667 F.2d 800, 802 (9th Cir.

25  1982).  A prehire agreement is voidable at either party's option until the union receives majority

26  support of the workers at the employer's construction site, at which time it matures into a fully

27

28

binding collective bargaining agreement.  *John S. Griffith Constr. Co. v. United Brotherhood of Carpenters & Jointers of S. Cal.*, 785 F.2d 706, 709 (9th Cir. 1986).

Sentinel Maintenance avers that the MLA is void *ab initio* because it is not legally permitted to join a Section 8(f) prehire agreement.  (ECF No. 40 at 13).  Sentinel Maintenance believes that the language of the MLA suggests that it is a prehire agreement.  The MLA provides that "the Contractors are engaged in construction and solar work in Southern Nevada."  (ECF No. 41 at 9).  The MLA also covers "present and future contracting operations" to ensure the contractors "of their ability to procure employees for all of the work . . . to assure continuity of work in the completion of their construction contracts."  (*Id.*).  Sentinel Maintenance thus believes that the MLA is a Section 8(f) prehire agreement to which it cannot join under law.

The trust funds' response shows that this issue is disputed.  As stated by the trust funds, principles of contract interpretation do not automatically apply in ERISA actions.  "For reasons of public policy, traditional contract law does not apply with full force in actions brought under the Employment Retirement Income Security Act (ERISA) to collect delinquent trust fund contributions."  *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir. 1986). The Ninth Circuit has also held that the invalidity of a collective bargaining agreement is not a valid defense to the employer's obligation to an ERISA plan.  *See, e.g., MacKillop v. Lowe's Mkt., Inc.*, 58 F.3d 1441, 1446 (9th Cir. 1995).  The court must look to the language of the MLA, which is subject to a multitude of interpretations without more background information.

Accordingly, it would be gravely premature for the court to grant summary judgment in defendants' favor regarding whether Sentinel Maintenance was expressly bound by the MLA and thus required to make contributions to the employees' health and pension benefits.

. . .

- 8 -

B.  <u>Whether Sentinel Maintenance evidenced an intent to be bound by the MLA</u>

In their respective motions for summary judgment, the parties contest whether Sentinel Maintenance evidenced an intent to be bound by the MLA.  Although Sentinel Maintenance may not have been expressly bound by the MLA, the facts demonstrate it undoubtedly evidenced an intent to be bound by the MLA through its conduct.

"To determine whether a party has adopted a contract by its conduct, the relevant inquiry is whether the party has displayed 'conduct manifesting an intention to abide by the terms of the agreement.'" *S. Cal. Painters & Allied Trade Dist. Council No. 36 v. Best Interiors, Inc.*, 359 F.3d 1127, 1133 (9th Cir. 2004) (internal citation omitted).  An employer evidences an intent to be bound by a labor agreement by complying with the terms of the agreement by deducting and remitting dues, paying union wages and benefits, and representing itself as a union business." *Id*. Remitting employee benefit contributions also evidences an intent to be bound by a labor agreement.  *See Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 763 (9th Cir. 1981).

The trust funds argue that Sentinel Maintenance complied with the MLA, paid wage rates dictated by the MLA, made trust fund contributions, and held itself out as a signatory employer. The trust funds claim that Sentinel Maintenance contracted with two former clients of Old SMI, which is proof that Sentinel Maintenance was holding itself out as a signatory employer.  (ECF No. 65 at 16).

There is no doubt that Sentinel Maintenance evidenced an intent to be bound by the MLA. The key facts in the trust funds' motion are that Ms. Caspi indicated that Sentinel Maintenance was agreeing that it was signatory to the MLA; it followed the MLA's dispatching procedures; it paid the union members the rate dictated in the MLA, while also paying payroll taxes; and it complied with the MLA by paying employee benefit contributions directly to the trust funds, as

did the Old SMI.  (*Id.* at 16-17).

Most importantly, and a factor sufficient to show an intent to be bound in and of itself, Sentinel Maintenance executed thirty-one remittance reports, all of which contained a statement assenting to be bound by the MLA.  The language in the remittance reports certified that the "employer is, and by signing below, confirming that it is signatory and bound to . . . the current master labor agreement (MLA) of the [unions]."  (*See generally* ECF No. 45-5 at 8).

Several circuit courts have held that signing a remittance report signifies an intent to be bound by a collective bargaining agreement.  "Certification language is significant, and may be sufficient, to the extent that it incorporates other written agreements with the employer—such as a collective bargaining agreement or trust agreements—which do not set forth the 'detailed basis' for payments as required by section 302(c)(5)(B)."  *Bricklayers Loc. 21 of Ill. Apprenticeship and Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 771 n.9 (7th Cir. 2004); *see Guthart v. White*, 263 F.3d 1099, 1103 (9th Cir. 2001) (holding that "[u]nder the plain words of the statute, any written agreement with the employer can establish an employee's eligibility for Trust benefits, so long as it actually specifies, directly or by incorporation, 'the detailed basis' on which contributions are to be made.").

As stated, *supra*, the language in the MLA is clear that the employer, which in this case is Sentinel Maintenance, is bound by the MLA.  To cinch the matter, Ms. Caspi herself admitted that she read the certification when submitting employee benefit contributions on behalf of Sentinel Maintenance.  (*See* ECF No. 45-2 at 355-56).

When evaluating a party's intent to be bound by a collective bargaining agreement, courts have examined whether an employer complies with an audit process.  *See Fiorentino v. Bricklayers & Allied Craftworkers Loc. 4 Pension Plan*, No. 2:15-cv-02065-FLW-LHG, 2016 WL 5723660,

at *17 (D.N.J. Sept. 30, 2016).

Defendants do no contest that Ms. Caspi submitted to the audit, but claim she did so by innocent mistake only. (ECF No. 50 at 13). Even if the court were to accept defendants' argument that submitting to the audit was an administrative mistake, the fact remains that the audit shows there was a single payroll system for Sentinel Maintenance and SMI.

The totality of the facts compels the court to find that Sentinel Maintenance intended to be bound by the MLA. Accordingly, the trust funds' motion for summary judgment is granted as to this issue, and defendants' motion for summary judgment is denied as to this issue.

C.  Whether Sentinel Maintenance and SMI are alter egos

The parties' cross-motions for summary judgment also dispute whether Sentinel Maintenance and SMI are alter egos.

The Ninth Circuit has applied an alter ego analysis where, as here, both the signatory and non-signatory companies coexist. "The criteria for determining whether two firms constitute a single employer are (1) common ownership, (2) common management, (3) interrelation of operations, and (4) centralized control of labor relations." *UA Loc. 343 United Ass'n of Journey & Apprentices of Plumbing and Pipefitting Indus. of the U.S. and Can., AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994).

The court adopts the trust funds' argument and rules that they satisfy the requisite four elements to show that Sentinel Maintenance and SMI are alter egos. Sentinel Maintenance and SMI satisfy the first alter ego element of common ownership. Greco and Schultz both owned a 50% interest in Sentinel Maintenance and both owned a 50% interest in SMI. (ECF No. 45-3 at 76-77).

The trust funds also satisfy the element of commonality of management. Sentinel

Maintenance employed individuals, while Ms. Caspi testified that SMI did not have any employees.  (ECF No. 45-2 at 345).  Thus, all employees were employed by Sentinel Maintenance.  As the trust funds state, "[t]o the extent [] SMI can be considered an employer, the management personnel were all employed by [] Sentinel Maintenance."  (ECF No. 65 at 24).  The two entities therefore have common management.

The interrelation of operations element also weighs in favor of the trust funds.  It appears that SMI did nothing at all, as all operations ran through Sentinel Maintenance, such as signing all the contracts, paying the employees, and being named on the contracts for clients.  There was only one payroll system, and defendants testified that when it came to paying employee benefit contributions, both entities would sometimes pay, but it depended on which one "had more money in the bank account."  (ECF No. 45-2 at 357).  Thus, there was a strong interrelation of operations between Sentinel Maintenance and SMI.

Finally, Sentinel Maintenance and SMI shared centralized control of labor relations.  The analysis here is simple: Sentinel Maintenance and SMI shared a commonality of labor relations because Sentinel Maintenance was the only entity conducting any business operations, as SMI did not have any employees.

Defendants attempt to refute alter ego status by averring that the trust funds fail to show that SMI was used in a sham effort to avoid collective bargaining obligations.  However, the trust funds are not required to prove this allegation.  *See Bd. of Trs. of IBEW Loc. Union No. 100 Pension Tr. Fund v. Power Design Elec., Inc.*, No. 1:17-cv-01483-EPG, 2019 WL 4274093, at * 13-14 (E.D. Cal. Sept. 10, 2019) ("[a]lthough the Ninth Circuit has not directly addressed whether wrongful motive is required for finding alter ego status, other circuits have addressed the issue and have concluded that wrongful motive . . . is not a requirement for finding alter ego status.").

The court finds that Sentinel Maintenance and SMI are alter egos.  Accordingly, the trust funds' motion for summary judgment is granted as to this issue, and defendants' motion for summary judgment is denied as to this issue.

D.  <u>Application of the single employer theory of liability</u>

The last contention in the parties' cross-motions for summary judgment is whether Sentinel Maintenance and SMI are both bound by the MLA under the single employer theory of liability. The alter ego and single employer theories of liability require a showing of the same four elements elucidated in the previous section of the court's order.  *See Carpenters' Loc. Union No. 1478 v. Stevens*, 743 F.2d 1271, 1276 (9th Cir. 1984).

However, the Ninth Circuit requires a finding by the National Labor Relations Board ("NLRB") that the two employers comprise a single bargaining unit.  *See S. Cal. Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co., Inc.*, 558 F.3d 1028, 1034 (9th Cir. 2009).  The trust funds ask the court to follow Second Circuit and Fifth Circuit precedent holding that district courts have jurisdiction to decide the single employer theory of liability without a finding by the NLRB.

While the court is not persuaded by this argument, the court agrees with the trust funds' contention that this matter is distinguishable from the Ninth Circuit case cited by defendants.  As the trust funds posit, "this is not an applicable requirement in an ERISA delinquent contribution context where there is not, in fact, a second bargaining unit because the second entity (Old SMI) admittedly has *no employees*," thus distinguishing the instant matter from the Ninth Circuit case cited above.  (ECF No. 54 at 19) (emphasis in original).

Accordingly, the trust funds' motion for summary judgment is granted as to this issue, and defendants' motion for summary judgment is denied as to this issue.

. . .

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E.  Relief sought by the trust funds

The trust funds seek an entry of judgment against defendants for $1,752,139.00, which consists of delinquent contributions, interest, liquidated damages, audit fees, and attorney's fees and costs.  The court will analyze each category of relief sought by the trust funds.

i.    *Delinquent contributions*

A revised audit shows that from October 1, 2018, through March 1, 2022, Sentinel Maintenance failed to pay $975,111.81 in contributions.  (ECF No. 45-6 at 18).  The trust funds correctly note that this total includes a portion of Old SMI's liability, and given that Old SMI is not a party in this case, that portion should be deducted from the total contribution amount.  (ECF No. 65 at 28).  Pursuant to the revised audit, Old SMI's liability is $2,316.00.  After subtracting this amount from the total shown in the revised audit, the correct contribution amount is $972,795.81.

ii.    *Interest*

The revised audit calculates interest through June 30, 2023.  (*See generally* ECF No. 45-6).  After subtracting Old SMI's liability for 2018 and 2019, the interest calculated on the audit is $327,118.  (*Id.* at 18).  The court is aware that almost a year has passed since the audit was completed, meaning that interest on the delinquent contributions continues to accrue.  Accordingly, the court grants the trust funds' request to seek leave to provide a revised calculation regarding interest, if necessary.  (*See* ECF No. 65 at 30 n.4).

iii.    *Liquidated damages*

29 U.S.C. § 1132 provides that in actions involving delinquent contributions, the liquidated damages amount is equal to the greater of either (1) interest on the unpaid contributions or (2) twenty percent of the delinquent contributions.  29 U.S.C. § 1132(g)(2)(C)(ii).  Rounded to the

nearest dollar, twenty percent of $972,795.81, which represents the delinquent contributions total, is $194,559. This is less than the amount of interest, which is $327,118. Accordingly, the liquidated damages total is $327,118.

### iv.     Audit fees

The auditor's invoice states that the auditor's fees are $7,810.00. (ECF No. 45-7 at 24).

### v.     Attorney's fees

Finally, the trust funds seek attorney's fees and costs in the amount of $117,967. (ECF No. 65 at 29). Under Federal Rule of Civil Procedure 54(d), a prevailing party seeking attorneys' fees must meet the following four requirements: (1) file the motion no later than fourteen days after the entry of judgment; (2) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; (3) state the amount sought or provide a fair estimate of it; and (4) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made. Fed. R. Civ. P. 54(d)(2).

Here, the trusts funds provide invoices without affidavits or a brief summary of the work involved. This is insufficient under Local Rule 54-14(b). While the trust funds may move for attorney's fees in a separate motion, it is premature to do so at this time.

### vi.     Final calculation of relief

The court adds the amount of delinquent contributions, interest, liquidated damages, and audit fees when calculating the appropriate relief total. These amounts are $972,795.81; $327,118; $327,118; and $7,810.00; respectively. Thus, the total relief amount is $1,634,841.81.

## IV.    Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants Sentinel

1   Maintenance of Las Vegas, LLC and SMI, LLC's motion for summary judgment (ECF No. 40)

2   be, and the same hereby is, DENIED.

3       IT IS FURTHER ORDERED that plaintiffs Board of Trustees of the Construction Industry

4

5   and Laborers Health and Welfare Trust, the Board of Trustees of the Construction Industry and

6   Laborers Joint Pension Trust, the Board of Trustees of the Construction Industry and Laborers

7   Vacation Trust, and the Board of Trustees of the Southern Nevada Laborers Local 872 Training

8   Trust's motion for summary judgment (ECF No. 45) be, the same hereby is, GRANTED.[2]

9

10       Plaintiffs shall submit a proposed judgment in accordance with the foregoing.

11       DATED March 27, 2024.

12

13   _____

14   UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27   _____

28   [2] The court also grants ECF Nos. 46 and 65, which are duplicative of plaintiffs' original motion for summary judgment but contain amended exhibits due to the magistrate judge's order on numerous motions to seal these exhibits.  (ECF No. 60).